Bobby **HENARD**, Petitioner,

v.

**Al PARKE, Respondent.**

No. 3:97CV0314AS.

United States District Court,
N.D. Indiana,
South Bend Division.

April 2, 1998.

Bobby Henard, Pendleton, IN, pro se.

Martha J. Arvin, Office of Indiana Attorney General, Indianapolis, IN, for Al C. Parke.

Wayne E. Uhl, Martha J. Arvin, Office of Indiana Attorney General, Indianapolis, IN, for Herbert Newkirk.

Wayne E. Uhl, Office of Indiana Attorney General, Indianapolis, IN, for Charles Miller.

### MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

On May 2, 1997, *pro se* petitioner Bobby Henard (Henard), an inmate at the Indiana State Prison, Michigan City, Indiana ("ISP"), filed a petition seeking relief under 28 U.S.C. § 2254. The response filed by the Attorney General of Indiana on September 17, 1997, demonstrates the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982). On October 20, 1997, Henard filed a Traverse and a motion to enter interrogatories with proposed interrogatories attached. On December 2, 1997, this court denied the motion to enter interrogatories and denied the petition as to the Fourteenth Amendment due process claim. As to the Fourteenth Amendment equal protection claim, the court directed the respondent to show cause as to why this court should not grant the relief requested.

Respondent filed a Supplemental Return to order to Show Cause, again complying with *Lewis v. Faulkner*, on February 2, 1998. This supplemental order contained the affidavit of Mark Spohn, the hearing officer in charge of Henard's CAB proceedings. On February 26, 1998, Henard filed a traverse and a motion to strike Spohn's affidavit. Henard moves to strike the affidavit of Hearing Officer Mark Spohn, arguing that the affidavit is unsupported by evidence in the record.

■ When the admissibility of affidavits are in question, fit is generally in the context of summary judgment proceedings under Federal Rule of Civil Procedure 56(e). Affidavits considered in summary judgment motions must be based on "personal knowledge." *Visser v. Packer Engineering Assoc.,* 924 F.2d 655 (7th Cir.1991). They may not be

flights; of fancy, speculations, hunches, intuitions, or rumors about matters remote from the declarant's observations and first-hand experience. *Visser*, 924 F.2d at 659; *Friedel v. City of Madison*, 832 F.2d 965 (7th Cir. 1987). In reviewing Henard's equal protection claim, this court will consider only the portions of Spohn's affidavit that meet this requirement. The court will not strike the affidavit altogether.

Moving to the merits of the equal protection challenge, this court notes Henard's burden. The Supreme Court of the United States has said that to prevail on an equal protection claim, a plaintiff must show that a state official acted with a discriminatory purpose. *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). The Seventh Circuit has extended this holding to prison disciplinary cases, finding that an inmate "must demonstrate intentional or purposeful discrimination" to show an equal protection violation. *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir.1982). The petitioner must demonstrate that the decision maker, here the CAB, must have singled out a particular group for disparate treatment and selected a course of action at least in part for the purpose of causing its adverse effects on the identifiable group. *Shango*, 681 F.2d at 1104 (citing *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979)). *See also Hester v. McBride*, 966 F.Supp. 765 (N.D.Ind. 1997) (applying an equal protection analysis in prison disciplinary setting).

■ Henard attempts to demonstrate this intentional and purposeful racial discrimination by the fact that the five white offenders, who the CAB found guilty of the same offense that it sanctioned Henard to one year in segregation for, were sentenced to six months segregation. The other black offender found guilty of the same offense was also sentenced to one year segregation.[1] Therefore, the disparate treatment was based solely on race and proves intentional discrimination. The respondent argues that race was not the motivating factor. Rather, the fact that Henard and the other prisoner given the harsher sentence were found to be leaders and instigators, as opposed to key participants in the group demonstration, was the reason for the disparity in sentencing.

This stated method of determining each offender's sanction based on his role in the group demonstration is not mentioned in the record until the CAB's response to Henard's equal protection challenge in the CAB appeal process. At this point, the prison asserts, "Each offender's case was reviewed on its own merits and then each offender was sanctioned according to his leadership or involvement in the incident. One offender was found not guilty and some were sanctioned more severely than others." While the CAB asserts that the level of Henard's culpability is the reason for imposing a more severe sanction, it does not support this in the record through investigative reports, officer statements, or the report of the disciplinary hearing in which the CAB found Henard guilty. The differing roles justification is first mentioned in response to Henard's CAB appeal. While these legitimate factors may have been the true reason for the disparate treatment, this court must look to the record of the disciplinary proceedings that is before it.

In the Report of Disciplinary Hearing, the following is given as the finding of fact and evidence relied upon:

> The offenders [sic] basic defense appears to be that he didn't start or organize anything only that he asked a question. However, due to the fact that it was well past time for DCH offenders to have returned to the cellhouse, it was clearly a demonstration. It is also clear from staff statements that this offender did participate. Based on the staff statements, I find the offender guilty.

The fact that the hearing officer records that the offender's basic defense "appears to be that he didn't start or organize anything," indicates that leadership or instigator status may have been discussed at the hearing.

---

1. The court also notes that a third black prisoner was found not guilty of the group demonstrating charge.

However, the hearing officer does not address this particular defense or make any finding that the offender was an instigator or leader. He only finds that Henard "did participate" in what was "clearly a demonstration." In addition, the court has reviewed the staff statements that the CAB relied upon and finds no mention of leader or instigator status. The staff statements provide lists of names of participants, or those who were "verbally involved", or the "most vocal and visible." But as to those listed, the staff never distinguishes between leaders, instigators, or key participants. In fact, some of the prisoners who were identified by several members of the staff were never charged (Ellsworth, Williams) and another prisoner that was mentioned several times and also charged, was found not guilty (Dunville). Thus, there does not seem to be a consistent correlation between staff statements and the findings that the CAB made regarding the group demonstration.

The affidavit of Spohn is not helpful in clearing up this matter. Spohn cannot attest to whether Henard, or any of the other offenders, were key participants or leaders based on personal knowledge because he was not present at the demonstration. Neither can Spohn rely on his statement of findings in the Report, or the staff statements since none of these sources present Henard as a leader or instigator. These sources only indicate that Henard was a participant.

With all of this said, this case is easily distinguished from *Hester v. McBride,* 966 F.Supp. 765 (N.D.Ind.1997), where this court found that an inmate could not prevail on his equal protection claim based on allegations that he was sanctioned more severely than another inmate. In *Hester,* the more severe sanction was clearly justified because the other inmate was charged with the less serious crime of assault, whereas the petitioner had been charged with battery. *Hester,* 966 F.Supp. at 774. Here, the petitioner and the other prisoners were charged with and found guilty of the same offense of "engaging in, or encouraging others to engage in a group demonstration." Arguably, two distinct classes of offenders may fall within this one charge; those engaging in and those encour-

aging others, or in other words, key participants and instigators. However, the Report of Disciplinary Hearing does not enlighten the court that any such distinction was made.

The hearing officer recorded in the appropriate section of the Report that the reason Henard was sanctioned to one year in segregation was because of the "nature of offense." This, in itself, does not distinguish between a sanction imposed for violating the rule against group demonstrations because Henard was a key participant, or violating the rule against group demonstrations because Henard was a leader or instigator. "Nature of the defense" simply fails to articulate any valid reason for the disparity in sanctions, especially considering that the stated finding was that Henard "did participate." The court finds the respondent's defense that Henard was a leader and instigator unpersuasive.

Regardless, this court must still be convinced that Henard was intentionally discriminated against because of his membership in a particular class, not merely because he was treated unfairly as an individual. *See Smith v. Town of Eaton, Indiana,* 910 F.2d 1469, 1472 (7th Cir.1990); *Huebschen v. Department of Health & Social Servs.,* 716 F.2d 1167, 1171 (7th Cir.1983). A fact that may appear damaging to Henard's claim in this regard is that the only prisoner out of the eight charged who was found not guilty was also black. Arguably, if the CAB had truly singled out the black prisoners and imposed its sanctions for the purpose of causing adverse affects on them, it would be inconsistent with this motive to determine that one of the black prisoners charged was not culpable in any way. However, the issue presented here was not whether an equal protection violation occurred in the findings of guilt or innocence. Henard does not challenge the CAB's finding of guilt. He only challenges the disparity in the sanctions imposed upon those actually found guilty. The not guilty black prisoner does not belong in this equal protection analysis.

Henard has stated a claim of intentional discrimination based on race supported by the CAB's imposition of a sanction of one year in segregation for black offenders and

six months in segregation for white offenders charged with and found guilty of the same offense. The CAB's justification for this disparity is not supported in the record.

The court, for the foregoing reasons, holds that Henard's equal protection rights were violated during the January 13, 1997, CAB hearing. As a result, the court now **CONDITIONALLY GRANTS** Henard's federal habeas corpus petition. Further, the court **GRANTS** the respondent leave to amend the imposed sanctions to comport with equal protection. The respondent must provide the court with notice that such an amendment was made in accordance with this decision. If the respondent fails to correct Henard's record within 120 days of this decision, the petition will be fully granted and any sanctions imposed as a result of the January 13, 1997, CAB hearing will be ordered expunged.

**IT IS SO ORDERED.**